UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL THOMAS,        ) | | |
|     Plaintiff,        ) | | |
|             ) | | |
|   vs.        ) | 1:06-cv-830-SEB-JMS | |
|             ) | | |
| THE CONNOR GROUP, A REAL        ) | | |
| ESTATE INVESTMENT FIRM, LLC d/b/a )| | |
| The Connor Group,        ) | | |
|     Defendant.        ) | | |

**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause comes before the Court on the Motion for Summary Judgment [Docket No. 69] filed by Defendant, The Connor Group, A Real Estate Investment Firm, LLC, d/b/a The Connor Group ("Connor"), pursuant to Federal Rule of Civil Procedure 56. Plaintiff, Michael Thomas, brought suit against Connor, his former employer, alleging that Connor failed to pay his wages properly in accordance with the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and Indiana state law. Following the voluntary dismissal of Mr. Thomas's state law claims, Connor now asserts that it is entitled to judgment as a matter of law as to Thomas's remaining federal claim. For the reasons detailed in this entry, we GRANT Connor's motion.

**Factual and Procedural Background**

Connor is a real estate investment company which, among other activities, operates apartment complexes. Between March 24, 2005 and March 20, 2006, Mr.

Thomas was employed by Connor as a service technician, working primarily at one of Connor's complexes, Chapel Hill Apartments ("Chapel Hill"), in Indianapolis, Indiana. Thomas Dep. I at 8.  Connor paid Mr. Thomas an hourly wage of $13.00 per hour, and further permitted him to live in a Chapel Hill apartment rent-free as part of his compensation.  Id. at 12-13; Am. Compl. ¶ 8.  Living on the property was not a requirement of Mr. Thomas's employment with Connor.  Thomas Dep. II at 57.

Mr. Thomas was required to be "on call" at certain times to handle maintenance problems at the complex.  Connor provided Mr. Thomas with a pager when he was on call; if a resident paged Mr. Thomas to inform him of a maintenance emergency, Mr. Thomas's understanding was that he was to phone the resident within twenty minutes, and then be at the site of the problem within approximately one hour.  Id. at 55-57.  Mr. Thomas testified that he could get to Chapel Hill within an hour from most locations in the greater Indianapolis area, and further that he could and did eat, watch television, sleep, swim, play games with his children, go shopping, and spend time with friends during his on-call time.  Id. at 66-69.  Though the number of pages Mr. Thomas received while on call varied, he estimated that he would typically receive seven to ten calls per week, the majority of which were on Saturday and Sunday.  Id. at 77.

In Mr. Thomas's deposition, he testified that if he worked fifteen minutes or less on a call, he was paid for one-half hour of work; if he worked a half-hour or more, he was

2

paid for an hour; and if he worked more than an hour, he was paid actual time.[1]  Thomas Dep. II at 129.  In his depositions, Mr. Thomas testified as follows:

> Q. Have you ever not gotten paid for the physical time that you worked?
>
> A. No, sir.

Thomas Dep. I at 20.  However, in a later deposition, Mr. Thomas testified:

> Q. [. . .] [Y]ou are contending that there are some hours you worked while you were on call that were not properly recorded and you were not paid for; right?
>
> A. Right.

Thomas Dep. II at 153.  Mr. Thomas further testified that Connor had recordkeeping problems regarding the amount of time he had worked.  Thomas Dep. II at 8.  After the termination of his employment, Mr. Thomas presented his manager, Debra Peoples, with a document he had created entitled "On Call Log."  Def.'s Ex. 3; Peoples Dep. at 18-20.  Among other calls, this document reflects nine entries for maintenance work in different

---

[1] It appears from the briefs and from Mr. Thomas's deposition testimony that there was some inconsistency in how he was paid regarding whether consecutive calls were aggregated.  For example, one manager would aggregate consecutive calls of 25 and 35 minutes each to one hour of work time, which would result in one hour's worth of wages.  Mr. Thomas testified that a different manager required Mr. Thomas to clock in and out separately for each consecutive call, so that he would be paid a half-hour for the 25 minute call and an hour for the 35 minute call, for a total of one-and-a-half hours' worth of wages.  Def.'s Mem. at 10; Thomas Dep. I at 19.

We also note some discrepancy between Mr. Thomas's deposition testimony regarding the rate of pay for working while on call and his Amended Complaint; in his Amended Complaint, he stated that he was paid for one-half hour for each call answered, regardless of the length of time required to address the call.  Am. Compl. ¶ 13.

apartments on March 12, 2006.  Mr. Thomas also introduces a copy of his Time Card Report during the relevant period.  Def.'s Ex. 4.  This document does not show any time worked on March 12, 2006.

      Mr. Thomas also stated that he was to fill out "vouchers" in order to record his calls taken while on call, and that "for every call that you went to . . . you gained a half-hour voucher time."  Id. at 42, 44.  However, he stated that there were not always vouchers available for him to fill out, and that under his final manager, Ms. Peoples, the voucher system ended.  Id. at 49-52.  Connor counters that the vouchers were merely an employee reward system, paid on the honor system, and were not the primary means of compensation for on-call work; they could be saved up and then used for an additional half-hour adjustment of paid time.  Peoples Dep. at 41-45.

      On April 28, 2006, following the termination of his employment with Connor, Mr. Thomas filed this lawsuit in Marion Superior Court.  Connor removed the case to our court on May 23, 2006, pursuant to 28 U.S.C. §§ 1441(b) and 1367(a).  Mr. Thomas subsequently amended his complaint on December 15, 2006 [Docket No. 45].  Mr. Thomas's Amended Complaint brought three claims against Connor: Counts I and II, brought pursuant to Indiana Code §§ 22-2-5-2 and 22-2-9-2, asserting that Connor had failed to pay him earned wages in a timely fashion;[2] and Count III, brought pursuant to the FLSA, asserting that "Thomas should have received overtime pay for all the time that

---

[2] Originally, Thomas requested in his Amended Complaint that this cause be certified as a class action as to Counts I and II.

4

he worked when he was on call" or "[a]lternatively, Thomas should have received overtime pay for all the time that he actually worked while on call, rather than a lesser amount by having set pay per call." Am. Compl. ¶¶ 35-36. Counts I and II were subsequently dismissed on Mr. Thomas's own motion following the ruling of the Indiana Supreme Court in Naugle v. Beech Grove City Schools, 864 N.E.2d 1058 (Ind. 2007), in which the Court construed the relevant Indiana statutes upon related facts. Docket No. 65. In the instant motion, filed on November 15, 2007, Connor seeks summary judgment as to Count III, Mr. Thomas's sole remaining claim.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the

material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

### II.     Mr. Thomas's On-Call Time

As we have described, the sole remaining claim in Mr. Thomas's Amended Complaint is brought pursuant to the FLSA and is based on assertions that "Thomas should have received overtime pay for all the time that he worked when he was on call" or "[a]lternatively, Thomas should have received overtime pay for all the time that he actually worked while on call, rather than a lesser amount by having set pay per call." Am. Compl. ¶¶ 35-36.  In its memorandum in support of its summary judgment motion, Connor raises legal arguments in response to Count III which focus on whether an employee is entitled to payment for *all* time when he or she is on call, as opposed to only the time when the employee is actually *working* in response to a call.  In our view, Connor's approach reflects the most natural reading of Mr. Thomas's Amended Complaint, and responds appropriately with reasoned legal argument which demonstrates that Mr. Thomas was not, in fact, entitled to payment for all hours for which he was on call (but not actually working).[3]

---

[3] Pursuant to federal labor regulations, "[a]n employee who is required to remain on call
(continued...)

However, Mr. Thomas approaches the issue differently in his responsive brief. As to the "claim for on-call time" Mr. Thomas states that he "agrees that Connor is entitled to summary judgment on this portion of his claim." Pl.'s Resp. at 5. However, he asserts that the "obvious dispute" is that "he worked hours on call that Connor did not pay him for." Id. In other words, Mr. Thomas now appears to approach his claim not as a legal question of whether he should have been compensated for all on-call hours, but as a more fact-based inquiry regarding whether Connor properly paid him for hours that he actually worked. Mr. Thomas asserts that Connor did not do so, citing his deposition testimony and a perceived discrepancy between the "On Call Log" document and the Time Card

---

³(...continued)
on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call'." 29 C.F.R. § 785.17. In determining whether "on call" time is compensable, "[t]he key inquiry is whether the 'on call' time 'is spent predominantly for the employer's benefit or for the employee's[.]' . . . In other words, 'facts may show that the employee was 'engaged to wait,' which is compensable, or they may show that the employee 'waited to be engaged,' which is not compensable.'" Cleary v. ADM Milling Co., 827 F. Supp. 472, 475 (N.D. Ill. 1993) (quoting Owens v. Local No. 169, 971 F.2d 347, 350 (9th Cir. 1992) (internal citation omitted)). In making this determination, courts consider (1) the degree to which the employee is able to engage in personal activities while on-call, and (2) the agreement between the parties. Id.

Here, Connor argues (and Mr. Thomas does not dispute) that the evidence demonstrates that Mr. Thomas was able to use his on-call time for all manner of personal activities. He had approximately one hour to reach an apartment if he received a maintenance call, and as he testified, he was able to conduct many recreational activities in the Indianapolis area while on-call. Mr. Thomas has not demonstrated that being on call presented "such a hardship that it turn[ed] his waiting into working[.]" Jonites v. Excelon Corp., __ F.3d __, 2008 WL 879839, at * 3 (7th Cir. Apr. 3, 2008); Dinges v. Sacred Heart St. Mary's Hospitals, Inc., 164 F.3d 1056, 1058 (7th Cir. 1999) ("The regulatory question is whether the employee can use the time effectively for personal pursuits – not for *all* personal pursuits, but for many.") (internal quotation marks omitted). Further, the evidence does not suggest that Mr. Thomas was under an impression that he and Connor had agreed that he would be paid for all on-call time. Therefore, we agree with Connor that it was not required to compensate Mr. Thomas for all hours for which he was on call.

Report for March 12, 2006.  Pl.'s Resp. at 5.

Connor rejoins that Mr. Thomas's argument here represents a new allegation which is outside the scope of this lawsuit.  It asserts that Mr. Thomas's Amended Complaint and the Case Management Plan[4] do not provide a basis for a claim that he was not paid for particular hours worked while on call.  Connor objects that it would be grossly prejudicial to permit Mr. Thomas to add this new claim now, following discovery and nearly two years of litigation in which this claim was not considered.

We agree with Connor.  Despite Mr. Thomas's protestations to the contrary, it is evident that Mr. Thomas's Amended Complaint and the Case Management Plan do not support his attempts to "shoehorn" this allegation into the current litigation in order to defeat summary judgment.  Mr. Thomas's federal claim as articulated in those documents clearly contemplates whether, legally, he was entitled to be paid for his actually worked time *as opposed to all on-call time* – an argument which, he concedes, is unavailing – or, in the alternative, what his *rate of payment* should have been for time during which he (uncontestedly) actually worked (an argument which he does not pursue in his briefings).

---

[4] In his Case Management Plan summary, Mr. Thomas describes his federal claim as follows:

> Under federal law, Plaintiff claims that he was on call for Defendant, and that he was not able to use the time that he was on call sufficiently for his own purposes, and hence Defendant had to pay him for it, which would be overtime.  Alternatively, Plaintiff contends that if Defendant did not have to pay him for being on call, it would only pay him a set amount for a call, regardless of how long it took, which resulted in Plaintiff not being paid all the overtime he was due.

Case Management Plan at 2.

Neither of these two alternative claims encompasses Mr. Thomas's new argument that he was *wholly* uncompensated for time actually worked while on call.[5]  Accordingly, he may not introduce it here.

We note, however, that even if we were to consider Mr. Thomas's claim to be within the scope of the Amended Complaint, we have serious doubts as to whether he has presented a genuine issue of material fact that could defeat summary judgment as to this issue.  As Connor points out, Mr. Thomas's self-contradictory deposition testimony calls into question the veracity of his claim that he was not paid for time worked.  Moreover, the "On Call Log" submitted by Mr. Thomas is not in itself enough to create a material factual dispute.  This document does not show the date or time when work was completed (for example, whether a job would have been handled during normal working hours); moreover, Mr. Thomas's deposition testimony regarding the perceived discrepancy between the On Call Log and his time sheet for that period demonstrates that Mr. Thomas cannot identify with any specificity work he performed for which he was unpaid.  Thomas Dep. II. 154-57.  Such conjecture without concrete factual support is insufficient to overcome summary judgment.

Therefore, for the reasons we have stated, Connor's Motion for Summary Judgment is <u>GRANTED</u> in its entirety, and final judgment will be entered accordingly.

---

[5] Mr. Thomas's argument that the parties "impliedly agreed" to litigate this issue pursuant to Federal Rule of Civil Procedure 15(b) is also unavailing.  Connor clearly has not consented to the litigation of this issue, has not conducted discovery thereon, and has not in any way treated Mr. Thomas's pleading as though it had been amended to include such a claim.  <u>Cf. Good Humor Corp. v Popsicle Japan K.K.</u>, 810 F.Supp. 1001, 1008-09 (E.D. Wis. 1992).

IT IS SO ORDERED.

Date: __04/28/2008_____  *Sarah Evans Barker*  _____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Susan Oliver
BOSE MCKINNEY & EVANS, LLP
soliver@boselaw.com

Donald B. Rineer
DUNLEVEY MAHAN & FURRY
dbr@dmfdayton.com

Christopher Kenneth Starkey
starkeyck@msn.com

David L. Swider
BOSE MCKINNEY & EVANS, LLP
dswider@boselaw.com

Stephen Alan Watring
DUNLEVEY MAHAN & FURRY
saw@dmfdayton.com